Filed 3/28/19

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT


| | |
|---|---|
| JACKPOT HARVESTING, INC. et al., | H044953 |
| Plaintiffs and Respondents, | (Monterey County Super. Ct. No. 17CV000703) |
| v. | |
| APPLIED UNDERWRITERS, INC. et al., | |
| Defendants and Appellants. | |


Applied Underwriters, Inc. and two entities associated with it appeal the trial court's denial of Applied's motion to compel arbitration. Applied offered workers' compensation insurance to Jackpot Harvesting, Inc. and two related companies through a number of agreements and documents, one of which contained an arbitration agreement. After its insurance premiums rapidly increased, Jackpot believed that Applied and the two entities had mishandled claims made under the policy and had wrongfully failed to disclose how they calculated insurance premiums. Jackpot filed suit in Monterey County Superior Court.

Applied sought to compel arbitration of the dispute based on the arbitration agreement contained in one of the agreements. Jackpot opposed the motion to compel, arguing that the arbitration agreement was invalid under the California Insurance Code. Applied contended that, pursuant to the Federal Arbitration Act, only the arbitrator could

decide the threshold question of whether the arbitration agreement was enforceable, and the trial court did not have the authority to make this determination.

In a written order, the trial court rejected Applied's arguments and denied Applied's motion to compel arbitration. The trial court found that it had the authority to determine the validity of the arbitration agreement, and it concluded that the arbitration agreement was invalid under California law. The trial court also declined Applied's request that the court issue a written statement of decision further explaining the factual and legal basis for its finding that it had the authority to adjudicate the enforceability of the arbitration agreement.

Applied and the two entities associated with it appeal the trial court's order denying Applied's motion to compel arbitration and argue that the trial court erred in both its legal conclusions and by failing to issue a statement of decision under Code of Civil Procedure sections 632 and 1291. Finding no error, we affirm the trial court's order.

## I. FACTS AND PROCEDURAL BACKGROUND

Applied Underwriters, Inc. (Applied), Applied Underwriters Captive Risk Assurance Company, Inc. (AUCRA), and California Insurance Company (CIC) (collectively, the Applied Entities) are all indirect subsidiaries of Berkshire Hathaway Inc.[1] The Applied Entities sold a workers' compensation insurance policy to Jackpot Harvesting, Inc., Blacky Trucking Company, Inc., and L&J Farms (collectively, Jackpot) as part of Applied's "EquityComp program." As described by Applied, the EquityComp program is "a multi-component loss sensitive workers' compensation program through

_____

[1] Applied is a Nebraska corporation with its principal place of business in Nebraska. CIC is a subsidiary of Applied and is a California corporation licensed by the California Department of Insurance to sell multiple lines of property and casualty insurance, including workers' compensation insurance, with its principal place of business in Nebraska. AUCRA, another subsidiary of Applied, is also an Iowa insurance company and a licensed reinsurer authorized to transact business in California.

which participants can obtain workers' compensation insurance coverage—which employers must carry as a matter of law in California—while also allowing employers to share in underwriting profits should their claims loss experience turn out favorably."[2] According to a proposal that Applied provided to Jackpot, the program was the "best long term, cost effective workers' compensation solution available for middle market insureds in a broad range of industries in all states."

As part of Jackpot's purchase of the policy, the Applied Entities entered into the following two agreements with Jackpot in late 2013 or early 2014:[3] (1) a one-page "Request to Bind Coverages & Services" (Request to Bind), which was essentially an application from Jackpot to Applied for the EquityComp program and (2) a 10-page "Reinsurance Participation Agreement" that set out the "profit sharing" component of the program.[4]

The Request to Bind stated that Jackpot "request[s] that Applied Underwriters, Inc. through its affiliates and/or subsidiaries . . . pursuant to the Workers' Compensation Program Proposal & Rate Quotation . . . cause to be issued to [Jackpot] one or more workers' compensation insurance policies and such other insurance coverages identified in the Proposal . . . subject to [Jackpot] executing the following agreements . . . (1) Reinsurance Participation Agreement; and where available, (2) Premium Finance Agreement."[5] The Request to Bind, therefore, required that Jackpot

---

[2] In a "loss sensitive" program, the premium for the policy year is affected by the actual cost of claims incurred.
[3] Jackpot originally signed the agreements on December 31, 2013, but, for reasons unexplained in the record, Applied had Jackpot sign the agreements again on January 13, 2014.
[4] Jackpot entered into this agreement with AUCRA.
[5] There is no evidence in the record that Jackpot executed a Premium Finance Agreement.

3

enter into the Reinsurance Participation Agreement as part of its participation in the EquityComp program.

CIC simultaneously issued a "Workers' Compensation and Employer's Liability Insurance Policy" to Jackpot (the CIC Policy), which was made effective January 1, 2014; Applied had earlier provided to Jackpot a document called "Workers' Compensation Program Summary & Scenarios," which provided an overview of the nature and costs of the program.

The parties dispute the relationship among these documents. Jackpot characterizes them as "interrelated agreements," while the Applied Entities refer to them variously as "separate components" of the EquityComp program and "EquityComp program documents." It is undisputed that, of these documents, Applied filed only the CIC Policy with the California Insurance Commissioner.

With respect to dispute resolution, the Request to Bind was the only document that contained an arbitration agreement. The Request to Bind provided, "[Jackpot] understands that Applied engages in alternative dispute resolution of conflicts. [Jackpot] further agrees that any claims, disputes and/or controversies between the parties involving the Proposal or any part thereof (including but not limited to the Agreements and Policies) shall be resolved by alternative dispute resolution and submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act in conformity with the Arbitration Act of the State of Nebraska. Arbitration shall be in accordance with JAMS by a single arbitrator, with the arbitration held in Omaha, Nebraska." The Request to Bind further stated, "The agreement to arbitrate, as set forth above, is enforceable independent of any other agreements and/or policies between Applied, its affiliates and [Jackpot]."

The Reinsurance Participation Agreement did not contain an arbitration agreement. Its forum selection clause instead provided that the contracting party must bring any dispute in either federal court or in Nebraska state court. The Reinsurance

4

Participation Agreement also stated that it "represent[s] the entire understanding and agreement between the Parties with respect to the subject matter hereof and supersedes all prior negotiations, proposals, letters of intent, correspondence and understandings relating to the subject matter hereof."

The CIC Policy also did not contain an arbitration agreement. Instead, the "dispute resolution process" outlined in the CIC Policy described specified circumstances in which the policyholder (i.e., Jackpot) must first send a written "Complaint and Request for Action" to CIC and later, following certain other procedural steps, could appeal to the Insurance Commissioner of the California Department of Insurance. Other than this right to administrative review under specified circumstances, the CIC Policy was silent as to the resolution of disputes.

After entering into the EquityComp program in January 2014, Jackpot became dissatisfied because, in Jackpot's view, the Applied Entities wrongfully increased policy premiums and mishandled claims made under the policy. Jackpot filed suit in February 2017 in Monterey County Superior Court alleging, among other claims, that the Applied Entities had violated Insurance Code section 11658[6] by selling an insurance policy in California without having first submitted all of the "collateral agreements"—including the Request to Bind and the Reinsurance Participation Agreement—for regulatory approval. Specifically, Jackpot claimed that the Request to Bind and the Reinsurance Participation Agreement were void because "the Request to Bind alters the dispute resolution provisions of the policies and the [Reinsurance Participation Agreement], among other provisions, alters the payment requirements under the CIC policies," and the Applied Entities had not submitted these agreements for prior regulatory approval, a violation of section 11658. Jackpot also alleged that Applied committed fraud by

---

[6] Unspecified statutory references are to the Insurance Code.

5

misrepresenting the Reinsurance Participation Agreement and the EquityComp program, causing Jackpot to incur excessive premiums and unnecessary fees, costs, and expenses.

Applied filed a motion in the trial court to stay the lawsuit and to compel arbitration of all of Jackpot's claims against Applied based on the arbitration agreement contained in the Request to Bind. Jackpot in turn filed an opposition to Applied's motion to compel arbitration in which it argued that the arbitration agreement was unenforceable "because it was not filed and approved by the Department of Insurance before being sold to Jackpot," thus violating section 11658 and California Code of Regulations, title 10, section 2268.[7] Jackpot further argued that section 11658.5, which applies specifically to arbitration, did not preclude a finding by the trial court that the arbitration agreement was unenforceable under California law. Jackpot also contended that the arbitration agreement was unenforceable under Nebraska law.

At the hearing on the motion to compel arbitration, the trial court requested further briefing on the issue of whether Jackpot had made a "discrete challenge to the arbitration clause" in the Request to Bind.[8] In its supplemental briefing, Jackpot argued that its position that the arbitration agreement in the Request to Bind was invalid was "analytically distinct" from its argument that the Reinsurance Participation Agreement was itself illegal.

The trial court held a second hearing on the motion to compel arbitration. During the hearing, counsel for the Applied Entities orally requested, pursuant to Code of Civil Procedure sections 632 and 1291, that the trial court "issue a statement of decision explaining the factual and legal basis for any conclusion" that Jackpot had made a "specific" attack on the arbitration agreement.

---

[7] Applied also filed a motion to stay based on inconvenient forum, which was later denied. Applied has not appealed this order.

[8] The trial court also ruled on the parties' various requests for judicial notice, but those rulings are not at issue on appeal.

6

Following the hearing, the trial court issued a written order denying the motion to compel arbitration. The trial court determined that the arbitration agreement in the Request to Bind was void and unenforceable, as it was a collateral agreement that should have been filed for approval under section 11658 before being sold to Jackpot. The trial court also found that the arbitration agreement violated "Insurance Code section 11658.5 (nondisclosure of negotiability)," and that the entire Request to Bind was "illegal, void and unenforceable in its entirety" because it was a "collateral agreement in violation of California Insurance Law."

The trial court's order denied the request for a statement of decision under Code of Civil Procedure section 1291 because the "issues here solely involve interpretation of insurance documents" and there were no disputed factual matters at issue. Although it denied the request, the trial court added in its order, "if and to the extent required under Code of Civil Procedure § 1291, this Order recites the Court's findings and the basis for its holding." The Applied Entities timely appealed the trial court's order denying their motion to compel arbitration.[9]

## II. DISCUSSION

The Applied Entities raise four arguments on appeal.[10] First, they contend that the trial court was not authorized under the Federal Arbitration Act to resolve the parties'

---

[9] Applied's codefendants, CIC and AUCRA, filed a notice of joinder to join "only [Applied's] request that the Court stay the instant action in its entirety pending arbitration" of "Plaintiff's claims against [Applied]." Although CIC and AUCRA were not signatories to the arbitration agreement and did not file their own petitions to compel arbitration, Jackpot has not challenged CIC's and AUCRA's standing to appeal the trial court's order denying the petition to compel arbitration.

[10] Seven months after this case was fully briefed and after it had been scheduled for oral argument, the Applied Entities requested that we dismiss the appeal. Jackpot opposed the request. An appellant may not dismiss an appeal as a matter of right, and we have discretion not to dismiss the appeal. (*Huschke v. Slater* (2008) 168 Cal.App.4th 1153, 1160; Cal. Rules of Court, rule 8.244(c)(2).) Because similar arbitration agreements in connection with the EquityComp program are the subject of litigation in

7

dispute over the validity of the arbitration agreement. Second, they argue that the trial court erred in determining that the arbitration agreement was invalid as a matter of law. Third, even if the agreement were invalid, they contend that section 11658.5 of the Insurance Code mandates that the appropriate remedy for an invalid arbitration agreement is to default to California as the choice of law and venue for arbitration rather than to void the arbitration agreement altogether. Finally, the Applied Entities maintain that the trial court erred by failing to submit a statement of decision that complies with Code of Civil Procedure sections 632 and 1291 and ask that we remand the case for further factfinding by the trial court.

An order denying a petition to compel arbitration is an appealable order. (Code Civ. Proc., § 1294, subd. (a).) On appeal, where, as here, the facts regarding the petition to compel arbitration are undisputed, we review the order de novo. (*Brown v. Wells Fargo Bank, N.A.* (2008) 168 Cal.App.4th 938, 953.) Similarly, we engage in de novo review of issues of statutory interpretation implicated by the trial court's order denying the petition to compel arbitration. (*Association for Los Angeles Deputy Sheriffs v. County of Los Angeles* (2015) 234 Cal.App.4th 459, 467 (*County of Los Angeles*).)

A. *Authority to Adjudicate the Enforceability of the Arbitration Agreement*

The Request to Bind contains the only arbitration agreement between the Applied Entities and Jackpot, and both parties agree that the Federal Arbitration Act (9 U.S.C. §§ 1–16) (FAA) supplies the governing law. In enacting the FAA, Congress "creat[ed] a substantive rule applicable in state as well as federal courts." (*Southland Corp. v. Keating* (1984) 465 U.S. 1, 16.)

---

courts throughout the United States, we conclude the issues we address here are of "important and of continuing interest," and therefore we exercise our discretion to retain jurisdiction to address them. (See *City of Morgan Hill v. Brown* (1999) 71 Cal.App.4th 1114, 1121, fn. 5.)

8

As described by the United States Supreme Court, "under the severability principle, we treat a challenge to the validity of an arbitration agreement (or a delegation clause) separately from a challenge to the validity of the entire contract in which it appears. [Citation.] Unless a party specifically challenges the validity of the agreement to arbitrate, both sides may be required to take all their disputes—including disputes about the validity of their broader contract—to arbitration." (*New Prime Inc. v. Oliveira* (2019) ___U.S.___ [2019 U.S. Lexis 724] [139 S.Ct. 532, 539] (*New Prime*).)

Application of the "severability" principle determines whether the validity of the agreement to arbitrate should be separated—both substantively and in terms of the forum for resolving the dispute—from the merits of the underlying dispute. Under the FAA's severability principle, "an 'arbitration provision is severable from the remainder of the contract,' [citation] and its validity is subject to initial court determination; but the validity of the remainder of the contract (if the arbitration provision is valid) is for the arbitrator to decide." (*Nitro-Lift Technologies, L.L.C. v. Howard* (2012) 568 U.S. 17, 21.)

The Applied Entities concede that the arbitration agreement in the Request to Bind does not contain a delegation clause explicitly designating whether the trial court or the arbitrator should decide the threshold question of the validity of the arbitration agreement. In the absence of a delegation clause, we apply general principles of severability under the FAA.[11]

"[C]ourts presume that the parties intend courts, not arbitrators, to decide what we have called disputes about 'arbitrability.' These include questions such as 'whether the

---

[11] The same legal test governs the inquiries whether an arbitration agreement is severable from the rest of the contract such that a court should decide its validity and whether a court or an arbitrator should review the enforceability of a delegation clause. (See *New Prime*, *supra*, ___U.S. at p. ___ [139 S.Ct. at p. 539] [articulating the same legal test for both concepts].)

parties are bound by a given arbitration clause,' or 'whether an arbitration clause in a concededly binding contract applies to a particular type of controversy.' " (*BG Group, PLC v. Republic of Argentina* (2014) 572 U.S. 25, 34, citation omitted.) However, in a line of cases beginning with *Prima Paint Corp. v. Flood & Conklin Mfg. Co.* (1967) 388 U.S. 395, the Supreme Court has held that, under the severability principle, challenges to the validity of an agreement to arbitrate should sometimes be decided by the arbitrator. (*Rent-A-Center, West, Inc. v. Jackson* (2010) 561 U.S. 63, 70 (*Rent-A-Center*).)

If the party "challenges specifically the validity of the agreement to arbitrate," then the court will decide the enforceability of the arbitration agreement; however, if the suit questions "the contract as a whole, either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid," then the challenge to the agreement to arbitrate is not severable and the merits of the entire dispute should be determined by the arbitrator. (*Rent-A-Center*, *supra*, 561 U.S. at p. 70.)

Under the *Prima Paint* rule, which applies in state as well as federal courts, "attacks on the validity of an entire contract, as distinct from attacks aimed at the arbitration clause, are within the arbitrator's ken." (*Preston v. Ferrer* (2008) 552 U.S. 346, 353 (*Preston*).) "The *Prima Paint* rule is akin to a pleading standard, whereby a party seeking to challenge the validity of an arbitration agreement must expressly say so in order to get his dispute into court." (*Rent-A-Center*, *supra*, 561 U.S. at p. 80 (dis. opn. of Stevens, J.).)

The Fourth Circuit Court of Appeals—in a case examining the same insurance program challenged by Jackpot here—has summarized the relevant federal law as follows: "[U]nder *Rent-A-Center*, we first must decide whether [the plaintiff] lodged a challenge against the delegation provision in the [Reinsurance Participation Agreement], in particular. Second, if we conclude that [the plaintiff] specifically challenged the enforceability of the delegation provision, we then must decide whether the delegation

10

provision is unenforceable 'upon such grounds as exist at law or in equity.'  9 U.S.C. § 2."[12]  (*Minnieland Private Day School, Inc. v. Applied Underwriters Captive Risk Assurance Company, Inc.* (4th Cir. 2017) 867 F.3d 449, 455 (*Minnieland*).)

We conclude that Jackpot specifically challenged the arbitration agreement, and therefore the trial court properly determined the legality of the agreement in the first instance.  Jackpot specifically targeted the arbitration agreement as invalid in its complaint, and it raised separate grounds of invalidity applicable to both the Request to Bind as a whole and to the Reinsurance Participation Agreement.[13]  In its briefing in the trial court and on appeal Jackpot further specifically challenged the arbitration agreement on the grounds that it was illegal under both California and Nebraska law.

This case is thus distinguishable from the cases of *Rent-A-Center*, *Preston,* and *Buckeye Check Cashing, Inc. v. Cardegna* (2006) 546 U.S. 440 (*Buckeye*) upon which the Applied Entities rely.  In those cases, the plaintiffs made *no* discrete challenges to the arbitration or delegation provisions at issue, and therefore the Supreme Court concluded that the entire dispute—including the threshold question of arbitrability—must be decided by the arbitrator.  (*Rent-A-Center*, *supra*, 561 U.S. at pp. 73–74; *Preston*, *supra*, 552 U.S. at p. 354; *Buckeye*, *supra*, at p. 446.)

Relying on *Rent-A-Center*, the Applied Entities nevertheless argue that Jackpot must provide an "analytically distinct" argument that is "specific to the arbitration agreement" to satisfy the severability principle.  This argument finds some support in

---

[12] Although *Minnieland* addressed a delegation clause, the legal analysis for deciding whether a delegation clause should be enforced and whether the validity of an agreement to arbitrate is severable from the merits of the underlying dispute are the same. (See *ante*, fn. 11.)

[13] Jackpot also argues on appeal that the Request to Bind was "superseded" by the Reinsurance Participation Agreement, which does not contain an agreement to arbitrate. However, Jackpot did not raise this issue in the trial court, and we therefore decline to consider it.  (See *CNA Casualty of California v. Seaboard Surety Co.* (1986) 176 Cal.App.3d 598, 618.)

11

cases from the federal courts of appeal.  (See, e.g., *South Jersey Sanitation Co., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.* (3d Cir. 2016) 840 F.3d 138, 144–145 [holding claim of fraud should be determined by the arbitrator because plaintiff "alleges no arbitration provision-specific fraud, but rather challenges the arbitration provision only as part of its general challenge of the contract"]; *Bridge Fund Capital Corporation v. Fastbucks Franchise Corporation* (9th Cir. 2010) 622 F.3d 996, 1000 ["[W]hen a plaintiff argues that an arbitration clause, standing alone, is unenforceable— *for reasons independent of any reasons the remainder of the contract might be invalid*— that is a question to be decided by the court."  (Italics added.)].)

However, Applied does not cite any case from the United States Supreme Court holding that the *Prima Paint* rule requires that the substance of the challenge to the arbitration agreement must differ in all respects from the challenge to the underlying agreement.  While the United States Supreme Court has repeatedly emphasized that for a court (rather than an arbitrator) to determine the validity of the arbitration agreement, the party opposing arbitration must "challenge[] specifically the validity of the agreement to arbitrate," it has nowhere required that the legal argument upon which the challenge is based must relate solely to the arbitration agreement.  Applied's argument conflates the procedural requirements of *Prima Paint* (that the party must indicate that it is specifically challenging the arbitration agreement) with the substantive arguments the party must marshal for its challenge—a topic largely unaddressed by the United States Supreme Court cases in this area.[14]

---

[14] The Applied Entities cite for support *Monarch Consulting, Inc. v. National Union Fire Insurance Co. of Pittsburgh, PA* (2016) 26 N.Y.3d 659 [47 N.E.3d 463] (*Monarch*), a New York decision that addressed a challenge to the arbitration agreement and the agreement as a whole on the grounds that they violated section 11658's filing requirement.  However, in that case, the court did not reach the issue of whether the insureds had "sufficiently directed their attack to the arbitration provisions" but rather based its ruling on the delegation clause included in those provisions, holding that

In a decision analyzing nearly identical arguments made by the Applied Entities in support of a motion to compel arbitration in a similar lawsuit challenging the EquityComp program, the Fourth District Court of Appeal agreed with Applied Entities that "a party cannot trigger a judicial determination on the enforceability of a delegation provision merely by labeling a challenge to the broader arbitration clause or the substantive contract as a challenge to the delegation provision." (*Nielsen Contracting, Inc. v. Applied Underwriters, Inc.* (2018) 22 Cal.App.5th 1096, 1113 (*Nielsen*).) However, the court in *Nielsen* observed that "the need for a careful inquiry regarding the nature of the party's challenge does not support a blanket rule that any time there is a similar challenge to the delegation clause and to other contractual provisions, a court must ignore its statutory obligation to rule on state law contract defenses specifically asserted against the enforceability of the delegation clause." (*Ibid.*, italics omitted.) In *Nielsen*, the court upheld the trial court's finding that the plaintiffs in that case had "asserted a specific, substantive challenge to the delegation clause separate from the challenge to the arbitration clause and the underlying contracts, and this challenge was not merely a device to challenge other provisions in the contract." (*Ibid.*) Accordingly, the court affirmed the trial court's determination that it—rather than an arbitrator— should rule on the enforceability of the delegation clause. (*Ibid.*)

We similarly conclude that Jackpot asserted a specific challenge to the arbitration agreement in the Request to Bind that was distinct from other claims it made with respect to other elements of the EquityComp program. Three of the seven causes of action in Jackpot's complaint centered on the Reinsurance Participation Agreement and argued

---

"[r]egardless of whether the insureds sufficiently directed their attack to the arbitration provisions, a review of the record reveals that they did not specifically direct any challenge to the delegation clauses empowering the arbitrators to determine gateway questions of arbitrability." (*Monarch*, *supra*, at p. 676.) As noted above, the Request to Bind does not contain a delegation clause.

that it was unenforceable due to fraud, ambiguity, and unconscionability. These arguments did not depend on Jackpot's procedural attack on the arbitration agreement contained in the separate Request to Bind. In light of this specific challenge to the arbitration agreement, the trial court was obligated to consider its validity.

In their reply briefing, the Applied Entities assert that they do "not contend that a challenge to an arbitration provision must always be different from the challenge to the broader agreement," but rather that a challenge is insufficient under *Rent-A-Center* if it "depends upon contract provisions and evidence unrelated to the particular arbitration provisions [*sic*] being challenged." This argument fares no better under the relevant case law.

The Applied Entities misconstrue the holding in *Rent-A-Center*. In that case, the Supreme Court stated that "[i]f a party challenges the validity under § 2 [of the FAA] of the precise agreement to arbitrate at issue, the federal court *must consider* the challenge before ordering compliance with that agreement under § 4." (*Rent-A-Center*, *supra*, 561 U.S. at p. 71, italics added.) But *Rent-A-Center* did not impose any requirement that the challenge could only be based on matters within the arbitration agreement itself. Instead *Rent-A-Center* required "the basis of challenge to be directed specifically to the agreement to arbitrate before the court will intervene." (*Ibid*.) The Applied Entities' proposed rule cannot be reconciled with the Supreme Court's explanation in *Rent-A-Center* of how the plaintiff in that case hypothetically could have—but did not—establish the infirmity of the delegation clause at issue with respect to matters outside the clause itself. (*Id*. at p. 72; see also *Minnieland*, *supra*, 867 F.3d at p. 455 [discussing this aspect of *Rent-A-Center*].)

Applied's argument is particularly problematic under the facts of this case. The bulk of Jackpot's complaint against the Applied Entities focuses on alleged deficiencies in the Reinsurance Participation Agreement. However, that agreement does not contain an arbitration agreement. Instead, the Applied Entities seek to compel arbitration based

14

on the one-page Request to Bind, which Applied contends requires that the entire controversy be submitted to an arbitrator. Other courts have also found that the various documents that formed part of the EquityComp program were part of one "integrated transaction and must be read as one contract." (*Minnieland Private Day Sch., Inc. v. Applied Underwriters Captive Risk Assur. Co.* (4th Cir. 2019) 913 F.3d 409, 421.) While we do not reach that issue here,[15] the interrelatedness of these documents undercuts Applied's contention that the severability principle does not apply where the arguments made by the party resisting arbitration depend in part on contract provisions beyond the arbitration agreement itself.

The Applied Entities' workers' compensation insurance program at issue here has been the subject of litigation in courts throughout the United States. Many other courts have concluded, as we do here, that the trial court—rather than an arbitrator—should decide in the first instance the validity of the relevant arbitration agreement. (See, e.g., *Luxor Cabs, Inc. v. Applied Underwriters Captive Risk Assurance Co.* (2019) 30 Cal.App.5th 970, 980–981, petn. for review pending, petn. filed Feb. 5, 2019 (*Luxor*); *Nielsen*, *supra*, 22 Cal.App.5th at pp. 1110–1113; *Citizens of Humanity, LLC v. Applied Underwriters Captive Risk Assur. Co.* (2018) 299 Neb. 545, 567–568 [909 N.W.2d 614, 630-631]; *Citizens of Humanity, LLC v. Applied Underwriters, Inc.* (2017) 17 Cal.App.5th 806, 816; *Minnieland*, *supra*, 867 F.3d at pp. 455–456.)

---

[15] The Applied Entities also contend that they are entitled to a "full evidentiary hearing" on the issue of whether the trial court had authority to make the arbitrability determination, because there are factual disputes about the EquityComp program "and whether the RPA and the Request to Bind are standalone contracts or part of the insurance contract." However, Applied has forfeited this argument by failing to cite to any supporting authority to meaningfully develop it. (See *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785 (*Badie*).)

15

We join these decisions and conclude that, because Jackpot specifically challenged the arbitration agreement itself, the trial court had the authority to determine its enforceability in the first instance. We turn now to the merits of that question.

B. *Validity of the Arbitration Agreement in the Request to Bind*

Section 2 of the FAA provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract*." (9 U.S.C. § 2, italics added.) This final phrase of section 2 operates as a "saving clause [that] permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." (*AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 339.) Under California law, "[g]enerally a contract made in violation of a regulatory statute is void." (*Asdourian v. Araj* (1985) 38 Cal.3d 276, 291; see also *Malek v. Blue Cross of California* (2004) 121 Cal.App.4th 44, 70 [applying this rule in finding invalid an arbitration agreement because it failed to comply with the arbitration disclosure requirements applicable to health care service plans under California law].)

Jackpot argues that the arbitration agreement in the unfiled Request to Bind was a collateral agreement that materially contradicted the CIC policy filed with the Insurance Commissioner and thus violated section 11658 and associated regulations. The Applied Entities do not appear to challenge the trial court's determination that the unfiled arbitration agreement was a "collateral agreement" that the Applied Entities were required to file with California regulators, although they have done so in the context of other litigation related to the EquityComp program. (See, e.g., *Luxor*, *supra*, 30 Cal.App.5th at p. 986.) Instead, the Applied Entities primarily argue that the FAA

16

preempts the Nebraska law provision prohibiting arbitration for certain insurance-related agreements.

Whether the arbitration agreement in the Request to Bind is invalid because it violates section 11658 is a question of law subject to de novo review. (*County of Los Angeles*, *supra*, 234 Cal.App.4th at p. 467.) Section 11658, subdivision (a) provides, "A workers' compensation insurance policy or endorsement shall not be issued by an insurer to any person in this state unless the insurer files a copy of the form or endorsement with the rating organization pursuant to subdivision (e) of Section 11750.3 and 30 days have expired from the date the form or endorsement is received by the commissioner from the rating organization without notice from the commissioner, unless the commissioner gives written approval of the form or endorsement prior to that time." "If the commissioner notifies the insurer that the filed form or endorsement does not comply with the requirements of law, specifying the reasons for his or her opinion, it is unlawful for the insurer to issue any policy or endorsement in that form." (§ 11658, subd. (b).) "[A]n endorsement is an amendment to or modification of an existing policy of insurance" (*Adams v. Explorer Ins. Co.* (2003) 107 Cal.App.4th 438, 451) that " 'may alter or vary any term or condition of the policy.' " (*Id.* at p. 450.) At the time the Request to Bind was executed, California Code of Regulations, title 10, section 2268 (Regulations section 2268) provided: "No collateral agreements modifying the obligation of either the insured or the insurer shall be made unless attached to and made a part of the policy."[16]

As a preliminary matter, we note that California does not prohibit arbitration in the context of insurance contracts; indeed, the Insurance Code expressly contemplates the use of arbitration. (See § 11658.5, subd. (a)(1).) In their reply brief, the Allied Entities

---

[16] Effective April 2016, section 2268 was amended to reference "ancillary" rather than "collateral agreements." (*Nielsen*, *supra,* 22 Cal.App.5th at p. 1114; Cal. Code Regs., tit. 10, § 2268, subd. (b).)

contend for the first time that section 11658—which does not refer to arbitration—has been applied in a way that disfavors arbitration and is therefore invalid under the FAA. But they cite no authority for this assertion or justify their failure to raise the point in their opening brief. They also do not develop the point in any meaningful way and have therefore waived it. (*Proctor v. Vishay Intertechnology, Inc.* (2013) 213 Cal.App.4th 1258, 1274; *Lintz v. Lintz* (2014) 222 Cal.App.4th 1346, 1358.) Moreover, as other courts have noted, "§ 11658 does not even address arbitration or dispute resolution, and application of the FAA does not impair or supersede § 11658." (*Pacific States Industries Incorporated v. American Zurich Insurance Company* (N.D. Cal. Nov. 21, 2018, 18-CV-04064-LHK) WL 6106383 *5.)

The Allied Entities concede that the CIC policy was the only document relevant to Jackpot's participation in the EquityComp program that had been submitted to the Insurance Commissioner. The relevant question for the application of section 11658 and Regulations section 2268 is whether the Request to Bind constituted a "collateral agreement[]" that should have been submitted to the Insurance Commissioner before being issued.

We conclude that the Request to Bind is such a collateral agreement, triggering section 11658 and Regulations section 2268's regulatory approval requirement. The CIC policy does not provide for arbitration but rather allows for administrative review by the Insurance Commissioner for certain disputes and otherwise leaves Jackpot's rights to judicial review intact. (See *Luxor*, *supra*, 30 Cal.App.5th at p. 983.) The Request to Bind's arbitration agreement, which compels arbitration in Nebraska for a wide-array of disputes, materially changes the dispute-resolution terms in the CIC policy. (See *Nielsen*, *supra*, 22 Cal.App.5th at p. 1116.) Because the arbitration agreement in the Request to Bind materially changed the dispute resolution terms of the CIC, the provision constitutes

a "a collateral agreement that should have been filed and endorsed to the Policy" under section 11658. (*Luxor*, *supra*, at pp. 984–985.)[17] There is no dispute that the Request to Bind was not filed with the Insurance Commissioner. We therefore conclude that the Allied Entities violated California law when they issued the Request to Bind without first submitting it for regulatory approval.[18]

We turn now to the question whether the arbitration agreement's violation of section 11658 and Regulations section 2268 voids the provision.

C. *Remedy for the Violation of Section 11658*

The Applied Entities argue that, even if the arbitration agreement is invalid, section 11658.5 mandates that the remedy should be to default to California as the arbitral venue and the choice of law rather than to void the arbitration agreement. We review this matter of statutory interpretation de novo. (*County of Los Angeles*, *supra*, 234 Cal.App.4th at p. 467.)

Section 11658.5 requires any insurer "intend[ing] to use a dispute resolution or arbitration agreement to resolve disputes arising in California out of a workers' compensation insurance policy" to obtain a signed disclosure from the insured acknowledging "that choice of law and choice of venue or forum may be a jurisdiction

---

[17] In June 2016, the California Insurance Commissioner issued an administrative decision in a case involving a different insured in the EquityComp program in which the Commissioner found the Reinsurance Participation Agreement unlawful and void as a matter of law. (*Matter of Shasta Linen Supply, Inc.*, Decision & Order, dated June 20, 2016, File No. AHB-WCA-14-31.) We deny Jackpot's request that we take judicial notice of a later settlement agreement between CIC and AUCRA and the California Department of Insurance in which CIC and AUCRA agreed to dismiss their writ petition challenging the Insurance Commissioner's decision. As we do not rely on *Shasta Linen* here, the settlement agreement in that case is not relevant to this appeal.

[18] In light of this conclusion, we do not reach Jackpot's alternative argument that the arbitration agreement violated Nebraska law. Because we determine that the arbitration agreement violated section 11658, we also do not address the trial court's conclusion that it also violated section section 11658.5.

other than California and that these terms are negotiable." (§ 11658.5, subd. (a)(1).) Failure to comply with this disclosure requirement "shall result in a default to California as the choice of law and forum for resolution of disputes arising in California." (*Id*., at subd. (c).)

We do not agree with the Applied Entities' contention that section 11658.5 provides the appropriate remedy for their violation of section 11658. As described above, the Request to Bind violated California law because it constituted a material alteration of the insurance policy that had not been submitted to the insurance commissioner for approval before it was issued. The aspect of the Request to Bind at issue here was that it mandated dispute resolution through arbitration, whereas the CIC policy (which had been submitted for regulatory approval) was "silent as to the resolution of disputes, leaving intact all of the insured['s] standard rights to judicial review." (*Luxor*, *supra*, 30 Cal.App.5th at p. 983.) While it is true the subject matter of this material alteration is arbitration, the crux of the violation involves failure to submit the document for regulatory approval—not that it required arbitration of disputes related to the Request to Bind.

Section 11658.5, by contrast, has a different focus. The provision requires the "disclosure of dispute resolution provisions and an opportunity to negotiate them in connection with any written quote for the provision of workers' compensation coverage." (*Luxor*, *supra*, 30 Cal.App.5th at p. 984, fn. 9.) It does not alter the filing requirement under section 11658 or govern the remedies for failing to do so. (*Nielsen*, *supra*, 22 Cal.App.5th at p. 1120.) Therefore, the remedial provision provided by section 11658.5 is inapposite to determining the remedy for violation of section 11658.[19]

---

[19] In light of this conclusion, we do not address the Applied Entities' arguments regarding the legislative history of section 11658.5, which is irrelevant to our interpretation of the text of section 11658.

20

In general, "a contract made in violation of a regulatory statute is void." (*MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412, 435.) We agree with the court in *Nielsen* and conclude that the Applied Entities' violation of section 11658 rendered the arbitration agreement void. "In California, workers' compensation insurance (or an adequate substitute) is mandatory, and the Insurance Commissioner is charged with closely scrutinizing insurance plans to protect both workers and their employers. To accomplish this objective, the Legislature mandated that the Commissioner have full access to insurance information through mandatory filing requirements. It follows that a violation of these requirements prevents crucial regulatory oversight and thus renders the unfiled agreement unlawful and void as a matter of law." (*Nielsen*, *supra*, 22 Cal.App.5th at p. 1118, citations omitted.)

Accordingly, the trial court did not err in voiding the arbitration agreement included in the Request to Bind.[20]

D. *Statement of Decision*

Finally, the Applied Entities contend that the trial court erred by failing to enter a sufficient statement of decision under Code of Civil Procedure sections 632 and 1291, because the trial court's written order was at best "sparse" and "convolute[d]" the issues on appeal. "Under the general rules applicable to a trial court's statement of decision, an appellate court independently reviews questions of law and applies the substantial evidence standard to findings of fact." (*Central Valley General Hospital v. Smith* (2008) 162 Cal.App.4th 501, 513 (*Central Valley*).)

---

[20] We note that the trial court order that is the subject of appeal addressed primarily the arbitration agreement contained within the Request to Bind, but it also voided the one-page Request to Bind "in its entirety." By contrast, our decision here is confined to the arbitration agreement, since the Allied Entities' appeal focuses only on the trial court's decision to void the arbitration agreement, and they do not advance any arguments specific to the remaining portions of the Request to Bind.

21

Section 632 of the Code of Civil Procedure requires a statement of decision upon "the trial of a question of fact by the court." (Code Civ. Proc., § 632.) Code of Civil Procedure section 1291 provides, "A statement of decision shall be made by the court, if requested pursuant to Section 632, whenever an order or judgment, except a special order after final judgment, is made that is appealable under this title." (Code Civ. Proc., § 1291.) However, a court need only fairly disclose its determinations as to the ultimate facts and material issues in the case. (*Central Valley*, *supra*, 162 Cal.App.4th at p. 513.) A party must also file in the trial court any "specific objections" to the trial court's statement of decision or it waives any defects on appeal. (*Golden Eagle Ins. Co. v. Foremost Ins. Co.* (1994) 20 Cal.App.4th 1372, 1380.)

Here, the Applied Entities objected to the trial court's written order on the grounds that the trial court failed to sufficiently detail its conclusions that the Request to Bind modified the CIC policy and that Jackpot's challenge to the arbitration agreement was specific to the arbitration agreement itself. However, as the trial court correctly recognized, there was no dispute over the underlying terms in the insurance documents themselves, and therefore the order addressed only legal issues and did not make factual findings. (*Social Services Union v. County of Monterey* (1989) 208 Cal.App.3d 676, 681.) Moreover, given our de novo review of the trial court's ruling, any additional statement of decision would not have "materially aid[ed] this court's consideration of the issues on appeal."[21] (Cf. *Social Services Union*, *supra*, at p. 681.) We therefore reject the Applied Entities' conclusion that the trial court's written order was insufficient under Code of Civil Procedure sections 632 and 1291.

---

[21] The Applied Entities also contend that their "due process" rights were violated by the trial court's statement of decision—even though the trial court held two hearings on Applied's motion to compel arbitration where its counsel appeared and argued. They offer no authority supporting their argument and thus have forfeited it. (See *Badie*, *supra*, 67 Cal.App.4th at pp. 784–785.)

## III. DISPOSITION

The judgment is affirmed.  Respondents are entitled to their costs on appeal.

_____
DANNER, J.

WE CONCUR:



_____
GREENWOOD, P.J.



_____
GROVER, J.




*Jackpot Harvesting, Inc. et al. v. Applied Underwriters, Inc. et al.*
**H044953**

| | |
|---|---|
| Trial Court: | Monterey County Superior Court<br>Superior Court No. 17CV000703 |
| Trial Judge: | Hon. Thomas W. Wills |
| Counsel for Defendants and<br>Appellants: | Spencer Y. Kook<br>Travis Wall<br>Hinshaw & Culbertson |
| Counsel for Plaintiffs and<br>Respondents: | Larry J. Lichtenegger<br><br>Thomas R. Duffy<br>Duffy Law & Mediation |

*Jackpot Harvesting, Inc. et al. v. Applied Underwriters, Inc. et al.*
**H044953**