Filed 2/17/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ASSOCIATION FOR LOS ANGELES DEPUTY SHERIFFS et al., <br><br> Cross-complainants and Respondents, <br><br> v. <br><br> COUNTY OF LOS ANGELES, <br><br> Cross-defendant and Appellant. | B254982 <br><br> (Los Angeles County Super. Ct. No. BC480611) |

APPEAL from an order of the Los Angeles County Superior Court, William F. Fahey, Judge.  Reversed.

Liebert Cassidy Whitmore, Brian P. Walter, Geoffrey S. Sheldon, Paul D. Knothe for Cross-defendant and Appellant.

Goyette & Associates, Inc., Gary G. Goyette, for Cross-complainants and Respondents.

## INTRODUCTION

Cross-defendant and appellant the County of Los Angeles, by and through its Sheriff's Department and Lee Baca (County), sought to compel individual arbitrations of grievances by certain union employees employed by the Los Angeles County Sheriff's Department (LASD) and the now defunct Office of Public Safety (OPS) and represented by cross-complainants and respondents the Los Angeles County Professional Peace Officers Association (LAPPOA) and the Associations for Los Angeles Deputy Sheriffs (ALADS) (collectively Unions). The trial court refused to compel such arbitrations, ruling that Code of Civil Procedure section 1281.2 (section 1281.2) gave it discretion, in the interest of judicial economy, to stay the arbitration of arbitral issues between the parties while it resolved issues between the parties that were not subject to arbitration, which resolution might make arbitrations unnecessary. Because we hold that all of the issues between the parties were subject to individual arbitrations and therefore the part of section 1281.2 upon which the trial court relied was inapplicable, we reverse.

## BACKGROUND

The Unions represent employees in five bargaining units (sometimes BU's)—ALADS represents BU 611 (LASD non-supervisor or line level deputy sheriffs) and LAPPOA represents BU 612 (LASD supervisor level deputy sheriffs holding the rank of sergeant or lieutenant), BU 621 (LASD non-sworn employees including security officers), BU 631 (former OPS non-supervisor or line level peace officers), and BU 632 (former OPS supervisor level peace officers holding the rank of sergeant or lieutenant). The Unions, on behalf of their bargaining units, entered into five collective bargaining agreements or memoranda of understanding (MOU's) with the County concerning the employment of bargaining unit employees.

The MOU's contained grievance procedures for resolving complaints concerning the interpretation or application of the MOU's. The grievance procedures consisted of a series of progressive steps culminating in arbitration. The arbitration provisions in the MOU's for BU's 611, 612, and 621 allowed an employee, if represented by ALADS or

2

LAPPOA, to submit a written request for arbitration with the Los Angeles County Employee Relations Commission (ERCOM) upon the County's denial of a grievance; under the MOU's for BU's 631 and 632, LAPPOA was to file the request for arbitration with ERCOM on its employee's behalf.[1]

---

[1]  The arbitration provision in the MOU for BU 611 provides, in relevant part:
  "1.    Within ten (10) business days from the receipt of the written decision of the department head or his designated representative, an employee, only if he/she is represented by ALADS, may request that the grievance be submitted to arbitration as provided for hereinafter.
  "2.    Only those grievances which directly concern or involve the interpretation or application of the specific terms and provisions of this Memorandum of Understanding and which are brought by an employee who was represented by ALADS in any steps of the grievance procedure may be submitted to arbitration hereunder. . . ."

  The arbitration provision in the MOU for BU 612 provides, in relevant part:
  "1.    Within ten (10) business days from the receipt of the written decision of the department head or his/her designated representative, an employee, only if he/she is represented by PPOA, may request that the grievance be submitted to arbitration as provided for hereinafter.
  "2.    Only those grievances which directly concern or involve the interpretation or application of the specific terms and provisions of this Memorandum of Understanding and which are brought by an employee who was represented by PPOA in any steps of the grievance procedure may be submitted to arbitration hereunder. . . ."

  The arbitration provision in the MOU for BU 621 provides, in relevant part:
  "1.    Within ten (10) business days from the receipt of the written decision of the department head, or his designated representative, an employee, only if he/she is represented by PPOA, may request that the grievance be submitted to arbitration as provided for hereinafter.
  "2.    Only those grievances which directly concern or involve the interpretation or application of the specific terms and provisions of this Memorandum of Understanding which are brought by an employee who was represented by PPOA in all steps of the grievance procedure may be submitted to arbitration hereunder. . . ."

  The arbitration provision in the MOU for BU 631 provides, in relevant part:
  "A.    Within thirty (30) business days from the receipt of the written decision of the department head, or his/her designated representative, the Association may request that the grievance be submitted to arbitration as provided for hereinafter.

On behalf of the five bargaining units and their employees, the Unions filed class grievances with the County seeking overtime pay for "donning and doffing" and related activities—i.e., putting on, taking off, and maintaining their uniforms and equipment—and "off-the-clock" supervisory activities by certain bargaining unit employees. The County denied the grievances, and the Unions filed requests with ERCOM for class arbitration of the grievances, which requests ERCOM granted, consolidating the arbitration for the five bargaining units.

The County filed a complaint for injunctive and declaratory relief and a verified petition for a peremptory writ of mandate. The County alleged that ERCOM granted, over the County's objection, the Unions' request for an order consolidating the arbitration of the class grievances on behalf of BU's 611, 612, 621, 631, and 632 employees under the applicable MOU's. Those grievances involved approximately 10,000 current or former County employees and concerned claims for overtime pay for "donning and doffing" and related activities and for unreported overtime some employees worked performing supervisory tasks. The County sought a declaratory judgment that ERCOM's order granting the Unions' request for a class or consolidated arbitration violated the parties' agreements to arbitrate, an injunction prohibiting ERCOM from implementing its order for a class or consolidated arbitration and prohibiting the Unions from making further attempts to compel class or consolidated arbitration of their employees' grievances, and a peremptory writ of mandate ordering ERCOM to set aside its order for a class or consolidated arbitration.

---

"B.    Only those grievances which directly concern or involve the interpretation or application of the specific terms and provisions of this Memorandum of Understanding may be submitted to arbitration hereunder. . . ."

The arbitration provision in the MOU for BU 632 provides, in relevant part:
"A.    Within thirty days from the receipt of the written decision of the department head, or his designated representative, the union may request that the grievance be submitted to arbitration as provided for hereinafter.
"B.    Only those grievances which directly concern or involve the interpretation or application of the specific terms and provisions of this Memorandum of Understanding may be submitted to arbitration hereunder. . . ."

4

The County further alleged in its complaint that ERCOM had set the matter for an arbitration hearing and directed the parties to select an arbitrator. The County and the Unions stipulated to a stay of the consolidated class arbitration. When the parties subsequently had withdrawn their stipulation, the County filed its complaint.

The Unions filed a cross-complaint seeking recovery of unpaid overtime compensation allegedly owed to "thousands" of union employees under the applicable MOU's. In their cross-complaint, the Unions asserted causes of action for breach of contract and assumpsit and a petition for writ of mandate, but stated that they would litigate their cross-complaint only if the trial court granted the relief sought in the County's complaint—i.e., if the trial court ruled that the Unions were not entitled to consolidated class arbitration of their employees' grievances under the MOU's.

In the cross-complaint, the Unions alleged that employees in BU's 611, 612, 621, 631, and 632 were required to perform "donning and doffing" and related activities outside of and in addition to their regularly scheduled work hours without receiving the overtime compensation to which they were entitled under their respective MOU's for such activities. The Unions further alleged that specified categories of employees were required to perform additional identified "off-the-clock" tasks without receiving overtime compensation under their respective MOU's.

The County filed a motion for a writ of mandate ordering that ERCOM's decision to compel class arbitration in a consolidated proceeding be set aside. The trial court (Judge Luis A. Lavin) granted the motion. Judge Lavin determined that the MOU's were silent on the issue of class arbitration and that "[w]here class arbitration has not been specifically agreed to, the Court will not infer that mutual assent to class arbitration has occurred between the parties because class arbitration drastically changes the nature of arbitration. . . . [¶] Furthermore, . . . the plain language of the Memoranda of Understanding refers to a single employee filing a grievance on his or her behalf such that the plain language of the agreements does not demonstrate that the parties contemplated and agreed to class arbitration. . . . Because the Memoranda of Understanding are silent on the issue and refer to grievances of a singular employee

5

rather than a group of [*sic*] class of employees, the Court finds that the parties did not agree to class-wide arbitration." In light of its ruling on the writ petition, the trial court found the County's remaining causes of action moot. Judge Lavin transferred the matter to Department One for reassignment to a trial department for resolution of the Unions' cross-complaint, and the matter was assigned to Judge William F. Fahey.

The County filed a demurrer to the Union's cross-complaint, contending, among other things, that the Union's breach of contract cause of action failed because the MOU's required each individual employee to submit his or her claims to binding arbitration, which he or she had failed to do. The County argued that the Union's cause of action for assumpsit and petition for writ of mandate were defective as a matter of law. Judge Fahey overruled the demurrer as to the breach of contract cause of action and sustained the demurrer as to the assumpsit cause of action and the writ petition.

In its verified answer to the Union's cross-complaint, the County asserted the affirmative defense, among others, that "the Cross-Complainants' causes of action are barred because Cross-Complainants, their members and the County entered into agreements to arbitrate the claims involved in this matter, contained in Cross-Complainants' exhibits A through G, and the Cross-Complainants and/or their members have failed and refused to arbitrate in accordance with the parties' agreement."

Counsel for the County wrote a letter to counsel for the Unions stating the County's position that "the claims at issue must be resolved through individual arbitrations. As such, the County of Los Angeles reiterates its request that [the Unions] and their individual members, submit their claims for alleged unpaid MOU overtime to arbitration as required by their respective MOUs." Counsel for the Unions responded that consistent with Judge Fahey's ruling overruling the County's demurrer to the breach of contract cause of action, it would not submit the claims to individual arbitrations, but would litigate those claims.

The County filed its "motion/petition" to compel individual arbitrations and for dismissal of the cross-complaint or, alternatively, an order staying the cross-complaint pending the individual arbitrations. In opposition to the motion/petition to compel

6

individual arbitrations, the Unions argued, inter alia, that the motion/petition was not timely. The Unions said that such a motion should have been filed when the Unions filed or completed their class grievances or in response to ERCOM's order for consolidated arbitration. Instead, according to the Unions, the County refused to arbitrate at all. The County argued that there had been no delay, stating that its position from the outset was that the grievances should not be arbitrated on a class basis because the parties contracted for individual arbitrations. The County explained that its opposition to class arbitration— as expressed in its objections to the request for class arbitration before ERCOM, in its complaint, and in its demurrer to the cross-complaint—should be viewed as a demand for individual arbitrations.

At the hearing on the motion/petition, Judge Fahey stated that he was not inclined to grant the County's requested relief, and instead was considering staying arbitration. Judge Fahey said that the key provision of section 1281.2, the statute concerning compelled arbitration, was the paragraph that provided, "If the court determines that there are other issues between the petitioner and the respondent which are not subject to arbitration and which are the subject of a pending action or special proceeding between the petitioner and the respondent and that a determination of such issues may make the arbitration unnecessary, the court may delay its order to arbitrate until the determination of such other issues or until such earlier time as the court specifies." (See § 1281.2 subd. (c).)

Judge Fahey explained, "What we have here is, I guess the theoretical possibility of 10,000 individual arbitrations pursuant to the M.O.U., versus this one action, which is only at the pleading stage, but which may end up resolving some, if not all of the disputes, between and among the parties. [¶] And so I think based on [section] 1281.2 and judicial economy the better approach would be to stay any potential arbitration and deal with this case, which has been pending for almost two years; and as I noted in my previous ruling, has been the subject of other lawsuits and certainly other disputes between and among these parties and other law enforcement agencies through out [*sic*] the state. So that's my tentative."

7

The County argued that it had satisfied the requirements to compel individual arbitrations because the disputed claims were for violations of the overtime provisions of the MOU's and the MOU's provided for arbitration of overtime claims. Judge Fahey responded, "I don't think there is any dispute. There are these M.O.U.'s that do provide for arbitration. My colleague, Judge Lavin made his ruling, which is consistent with that. [¶] But we do have an extant case here in Superior Court. I'm presiding over it. And we do have, appropriately so, the Legislature has given us this language under [section] 1281.2 to deal with this precise scenario when you have the potential for conflicting rulings." Judge Fahey explained that he believed that it was more efficient to deal with "it" in one forum rather than in 10,000 cases with multiple arbitrators and parties. Counsel for the County responded, "Efficiency aside, the parties contracted for individual arbitrations." Judge Fahey concluded, "I think the Court does have the discretion to either stay one or the other. I think it's more judicially efficient to stay the more cumbersome unwielding [*sic*] 10,000-arbitration scenario, than it is to stay this one."

Judge Fahey said that the motion/petition to compel individual arbitrations was the first time "in this litigation that . . . a proper motion to compel arbitration has been filed." He did not rule on the timeliness of the motion/petition to compel individual arbitrations based on that filing. Judge Fahey adopted his tentative ruling as his final ruling.

## DISCUSSION

The County contends that the trial court erred in denying the County's motion/petition to compel individual arbitrations because the trial court relied on an inapplicable statutory provision to "avoid" compelling such arbitrations, the County fulfilled the elements to compel individual arbitrations, public policy supports the enforcement of the arbitration agreements, the County did not waive or forfeit its right to compel individual arbitrations, the Unions cannot avoid arbitrations by asserting representational standing, and the unavailability of class arbitration does not excuse the Unions from participating in arbitrations. Apart from the waiver or forfeiture issue, these contentions restate arguments the County made in its motion/petition to compel

8

individual arbitrations, apparently in anticipation of arguments it believed the Unions would make.  Of these contentions on appeal, only the County's claim that the trial court relied on an inapplicable statutory provision to avoid compelling individual arbitrations addresses the trial court's ruling on the County's motion/petition to compel individual arbitrations.  The trial court did not rule on the remaining contentions in denying the County's motion/petition to compel arbitration.[2]  Accordingly, we confine our discussion to the County's contention that the trial court incorrectly applied section 1281.2 to deny its motion/petition to compel individual arbitrations.

## I.      Standard of Review

"'There is no uniform standard of review for evaluating an order denying a motion to compel arbitration.  [Citation.]  If the court's order is based on a decision of fact, then we adopt a substantial evidence standard.  [Citations.]  Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed. [Citations.]'  [Citation.]" (*Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 60.)  Here, the trial court's decision was based on its view of the law, which decision we review de novo.  (*Ibid.*)  We also review issues of statutory interpretation de novo.  (*Barner v. Leeds* (2000) 24 Cal.4th 676, 683.)

---

**2**      Although the Unions relied on some of these arguments in opposition to the County's motion/petition to compel individual arbitrations and again on appeal, they did not request or obtain a ruling on the arguments from the trial court or file a protective cross-appeal concerning the trial court's failure to rule on the merits of their arguments. We decline to review issues not decided by the trial court.  (*Martinez v. Scott Specialty Gases, Inc.* (2000) 83 Cal.App.4th 1236, 1249.)

9

## II. The Trial Court Erred in Denying the County's Motion/Petition to Compel Individual Arbitrations Under Section 1281.2, Subdivision (c)

The County contends that the trial court improperly applied section 1281.2[3] in denying its motion/petition to compel individual arbitrations and in staying or delaying the arbitration of the arbitrable issues between the parties.  We agree.

---

[3]  Section 1281.2 provides as follows:

"On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that:

"(a)  The right to compel arbitration has been waived by the petitioner; or

"(b)  Grounds exist for the revocation of the agreement.

"(c)  A party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact.  For purposes of this section, a pending court action or special proceeding includes an action or proceeding initiated by the party refusing to arbitrate after the petition to compel arbitration has been filed, but on or before the date of the hearing on the petition.  This subdivision shall not be applicable to an agreement to arbitrate disputes as to the professional negligence of a health care provider made pursuant to Section 1295.

"If the court determines that a written agreement to arbitrate a controversy exists, an order to arbitrate such controversy may not be refused on the ground that the petitioner's contentions lack substantive merit.

"If the court determines that there are other issues between the petitioner and the respondent which are not subject to arbitration and which are the subject of a pending action or special proceeding between the petitioner and the respondent and that a determination of such issues may make the arbitration unnecessary, the court may delay its order to arbitrate until the determination of such other issues or until such earlier time as the court specifies.

"If the court determines that a party to the arbitration is also a party to litigation in a pending court action or special proceeding with a third party as set forth under subdivision (c) herein, the court (1) may refuse to enforce the arbitration agreement and may order intervention or joinder of all parties in a single action or special proceeding; (2) may order intervention or joinder as to all or only certain issues; (3) may order arbitration among the parties who have agreed to arbitration and stay the pending court action or special proceeding pending the outcome of the arbitration proceeding; or (4) may stay arbitration pending the outcome of the court action or special proceeding."

10

When a party brings a motion to compel arbitration under circumstances in which there may be arbitrable and nonarbitrable issues, the trial court should "first determine[] the arbitrable and nonarbitrable claims alleged in the complaint, order[] all of the arbitrable claims to arbitration, and stay[] all such claims pending arbitration. The court would then have . . . discretion to delay its order to arbitrate the arbitrable claims under section 1281.2(c), only if it first determine[s] that the adjudication of the nonarbitrable claims in court might make the arbitration unnecessary. Absent that determination, the arbitrable claims would proceed to arbitration and the nonarbitrable claims would continue to be litigated in court unless a party moved successfully pursuant to [Code of Civil Procedure] section 1281.4, to stay further litigation of such nonarbitrable claims." (*RN Solution, Inc. v. Catholic Healthcare West* (2008) 165 Cal.App.4th 1511, 1521-1522, fns. omitted.)

The trial court's reliance on the cited paragraph from section 1281.2, subdivision (c), was misplaced because there were no "other issues between the petitioner and the respondent which [were] not subject to arbitration and which [were] the subject of a pending action or special proceeding between the petitioner and the respondent . . . ." That is, the Unions' cross-complaint did not allege any claims that were not subject to the grievance procedures and arbitration. The five MOU's contained grievance procedures for resolving complaints concerning the interpretation or application of the MOU's, including claims for overtime pay. In the grievances the Unions filed on behalf of their bargaining unit employees (the denial of which grievances the Unions sought to arbitrate on a consolidated class basis), the Unions sought overtime pay under the MOU's for the employees' "donning and doffing" and related activities and the "off-the-clock" supervisory activities of certain employees. In the breach of contract cause of action in the cross-complaint the Unions filed on behalf of their bargaining unit employees, the Unions sought the same relief—they sought overtime pay for the employees' "donning and doffing" and related activities and the "off-the-clock" activities of certain identified employees. Because the Unions' claims in the grievances and the cross-complaint were the same—i.e., the cross-complaint raised no other nonarbitrable issues between the

11

parties—the trial court erred in denying the County's motion/petition to compel individual arbitrations and in staying or delaying the arbitration of the arbitrable issues between the County and the Unions and their employees. (§ 1281.2; see *RN Solution, Inc. v. Catholic Healthcare West, supra,*165 Cal.App.4th at pp. 1521-1522.)

The Unions suggest that common legal issues should be heard prior to any individual arbitrations and that this would satisfy the "other issues" determination by the trial court. This argument lacks merit because the legal issues referred to by the Unions are arbitrable. Unlike in *Iskanian v. CLS Transp. Los Angeles, LLC* (2014) 59 Cal.4th 348, there are no nonarbitrable "other issues" to litigate and thus no basis to stay or delay arbitration.

Moreover, in ordering arbitration stayed or delayed under section 1281.2, the trial court stated that it was doing so in the interest of judicial economy because there were 10,000 potential arbitrations, whereas the single cross-complaint might resolve "some, if not all of the disputes, between and among the parties." Judicial economy was not, however, a proper basis for delaying arbitration. (*Acquire II, Ltd. v. Colton Real Estate Group* (2013) 213 Cal.App.4th 959, 980 ["California courts have no inherent authority to deny arbitration simply because it would be more efficient to litigate the claims in court"].)

Finally, the Unions argue that because the MOU's provide that it is the Unions that bring claims for their members, individual arbitrations are not appropriate. This is an issue not ruled upon by the trial court. But we note that the fact that the Unions represent members as to their claims does not eliminate the obligation of the Unions to arbitrate on behalf of each Union member's claim. The Unions' claims and requested remedy seek monetary compensation for each Union member based on the facts applicable to each such member and, in effect, require the individual participation of each Union member with a claim. Even though each of the employees is, under the MOU's, "represented by" his or her union, and each individual claim is presented by a Union, each such claim is subject to arbitration. (See generally *Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court* (2009) 46 Cal.4th 993, 1004; *Airline Pilots Assn. Internat. v. United*

12

*Airlines, Inc.* (2014) 223 Cal.App.4th 706, 726-728; Gov. Code, § 3543.8.)  Under the MOU's, an employee may not proceed to arbitration without Union support.  But that does not mean the Union can proceed other than by representing individual employees in arbitration or opt for litigation over arbitration.

**DISPOSITION**

The order is reversed.  The County of Los Angeles is awarded its costs on appeal.

**CERTIFIED FOR PUBLICATION**

MOSK, Acting P. J.

We concur:

KRIEGLER, J.

GOODMAN, J.*

---

\* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.