Filed 2/3/22

# CERTIFIED FOR PARTIAL PUBLICATION[*]

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| EMINENCE HEALTHCARE, INC., et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> CENTURI HEALTH VENTURES, LLC, et al., <br><br> Defendants and Appellants. | F079993 <br><br> (Super. Ct. No. 19CECG00957) <br><br> **OPINION** |

APPEAL from an order of the Superior Court of Fresno County.  Alan M. Simpson, Judge.

Benesch, Friedlander, Coplan & Aronoff, Krista M. Enns and Rachel Chatman for Defendants and Appellants.

Whitney, Thompson & Jeffcoach, Timothy L. Thompson and Devon R. McTeer for Plaintiffs and Respondents.

-ooOoo-

---

[*]     Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II. of the Discussion.

Defendant companies appeal the partial denial of their motion to compel arbitration and the denial of their request to stay the litigation pending the outcome of the arbitration. The parties agreed to arbitrate "any dispute, controversy or claim arising out of or relating to" their agreement, "[e]xcept for claims seeking injunctive or other equitable relief." The trial court applied the plain meaning of the exception and concluded that plaintiff's causes of action seeking equitable relief were not subject to arbitration. The court also delayed the arbitration of the other causes of action until after the equitable claims were resolved in court.

Defendants contend the arbitration agreement's exclusionary language should be narrowly construed and the trial court should have determined all the causes of action were subject to arbitration. In the published portion of this opinion, we conclude the arbitration agreement carve-out for claims seeking equitable relief is not ambiguous and such causes of action are plainly excluded from the agreement to arbitrate. Therefore, the trial court properly concluded that the six causes of action in plaintiffs' complaint seeking equitable relief fall outside the agreement to arbitrate.

In the unpublished portion of this opinion, we address defendants' contention that the trial court misinterpreted provisions of the California Arbitration Act (Code Civ. Proc., § 1280 et seq.)[1] when it delayed the arbitration pending the outcome of the court proceedings. (See §§ 1281.2, subd. (d), 1281.4.) The trial court determined that the resolution of the nonarbitrable equitable claims "may make the arbitration unnecessary" in accordance with the third paragraph of subdivision (d) of section 1281.2. Based on this finding, the court concluded it had the discretion to "delay its order to arbitrate until the determination of" the equitable claims and exercised that discretion. (§ 1281.2, subd. (d).) In accordance with existing case law, we conclude the trial court properly interpreted the California Arbitration Act when it delayed the arbitration of the arbitrable

---

[1] Subsequent undesignated statutory references are to the Code of Civil Procedure.

2.

claims. (*Association for Los Angeles Deputy Sheriffs v. County of Los Angeles* (2015) 234 Cal.App.4th 459, 468 (*Los Angeles Deputy Sheriffs*).)

We therefore affirm the trial court's order.

## FACTS

Plaintiffs Eminence Healthcare, Inc., and Eminence Healthcare King, Inc., are California corporations with their principal place of business in Fresno County (collectively, Sellers). Plaintiffs Donnie Andrade and Richard Torosian are the sole shareholders of Sellers.

Defendant Centuri Health Ventures, LLC, is a New York limited liability company with its principal place of business in Rockland County, New York and defendant Eminence Healthcare Services, LLC is a California limited liability company (collectively, Buyers). Defendants Zisha Lipschutz and Esti Lipschutz are described in Sellers' complaint as the alter egos of Buyers and the persons who established and operated those entities. The individual defendants have not appeared in this appeal.

Sellers operated outpatient substance abuse clinics that provided intensive substance abuse counseling services for hundreds of students at more than three dozen high schools, alternative education schools, and middle schools throughout various school districts within Fresno and Kings counties. To provide the counseling services, both Sellers were required to have valid contracts with the counties and certifications from the State Department of Health Care Services (DHCS).

On September 20, 2017, Buyers and Sellers signed an asset purchase agreement in which Buyers agreed to acquire the assets used in or related to the conduct of Sellers' business. Buyers and Sellers also executed a management agreement under which Buyers agreed to manage both businesses while they fulfilled their obligations to close escrow on the asset purchase agreement. The management agreement stated (1) Sellers' business was licensed by DHCS and was an enrolled provider in the California Medicaid program; (2) the parties were required to obtain the consent of DHCS to the transfer of

3.

Sellers' license to Buyers and the consent of Medi-Cal to Buyers' enrollment as a Medi-Cal provider; and (3) the sale of assets would occur after the required consents were obtained and other conditions of closing were satisfied. Buyers agreed to devote their commercially reasonable best efforts and be responsible for the general management of the business and its day-to-day operations, which included preparing and submitting the filings necessary to maintain the business's accreditations, licenses, and permits. Sellers agreed, consistent with the delegation of duties to Buyers, to assist and cooperate with Buyers so the sale could be completed.

Effective May 1, 2018, the parties entered into a first amendment to the asset purchase agreement because the outside closing date of April 30, 2018, listed in the original agreement had not been met because "Closing Conditions in favor of the Buyer were not completed (or waived) by the Outside Closing Date," which made the agreement terminable by either party. The amendment stated the required consents had not been obtained and the Buyers agreed to devote diligent, commercially reasonable efforts to obtaining the required consents and to keep Sellers informed of the process. Sellers agreed to diligently cooperate, aid, and assist Buyers in pursuit of the required consents. The amendment gave Buyers the right to terminate the asset purchase agreement upon 30 days written notice if they reasonably determined that they would be unable to obtain the required consents, despite diligent, commercially reasonable efforts, and Sellers were not able to obtain the required consents within the 30-day period.

On August 6, 2018, Buyers sent Sellers notice that they were exercising the termination rights because they did not believe that they would be able to obtain the required consents. On September 28, 2018, after extending the 30-day period, counsel for Buyers sent counsel for Sellers an e-mail stating Buyers felt they had exhausted all of the options, were not willing to grant further extensions, and the asset purchase agreement and management agreement would terminate at 5:00 p.m. Further communications between the parties did not resolve the matter.

**PROCEEDINGS**

In March 2019, Sellers and the individual plaintiffs filed a complaint containing tort, contractual and statutory causes of action. Sellers alleged that in January 2018 Buyers had intentionally terminated all of Sellers' employees without Sellers' knowledge or consent, which was a breach of the management agreement and caused Sellers to be unable to provide substance abuse treatment services under their contracts. Sellers also alleged Buyers hired some of the employees directly and requested the County of Fresno to remit payment for invoices to a New Jersey address instead of Sellers' Fresno address. Sellers alleged the County of Fresno informed them in late spring or early summer that they were in breach of their contract with the county because Sellers had subcontracted with another entity to provide services to the county. At the time, Sellers disputed this claim, believing their employees were still providing services under Sellers' contract with the county.

Sellers' first three causes of action were for breach of the management agreement, the asset purchase agreement, and the implied covenant of good faith and fair dealing. Seller also included causes of action for intentional and negligent interference with contractual relations and intentional and negligent misrepresentation. The 10th through 15th causes of action sought (1) specific performance of the management agreement, (2) specific performance of the asset purchase agreement, (3) rescission based on fraud, (4) rescission based on negligent misrepresentation, (5) rescission based on mutual mistake, and (6) relief for violations of California's Unfair Competition Law (UCL), Business and Professions Code section 17200 et seq.

In May 2019, Buyers filed a motion to compel arbitration and stay the action pending arbitration. The moving papers stated defendants Zisha and Esti Lipschutz joined the motion "specifically to make a special appearance because they contest personal jurisdiction and join in the request to compel arbitration."

5.

On July 31, 2019, the trial court held a hearing on the motion to compel arbitration. In August 2019, the court issued a written order stating (1) the motion to compel arbitration was granted "as to all but causes of action 10-15 of the Complaint" and (2) the arbitration was delayed "until after causes of action 10-15 have been fully resolved in this court." Buyers timely appealed.

## DISCUSSION

I. INTERPRETATION OF ARBITRATION AGREEMENT

A. Basic Principles

Arbitration is strictly a matter of consent and, therefore, a party cannot be required to arbitrate a dispute that it has not agreed to submit to arbitration. (*Sandquist v. Lebo Automotive, Inc.* (2016) 1 Cal.5th 233, 252.) Stated another way, the parties may freely delineate in their contract which disputes will be arbitrated and which will not. (See *Gravillis v. Coldwell Banker Residential Brokerage Co.* (2006) 143 Cal.App.4th 761, 771 (*Gravillis*).) Thus, whether the parties agreed to arbitrate all or a portion of "the present controversy turns on the language of the arbitration clause." (*EFund Capital Partners v. Pless* (2007) 150 Cal.App.4th 1311, 1320 (*EFund*).)

The parties agree that where the language of the arbitration provision is not in dispute and no conflicting extrinsic evidence is introduced, the trial court's decision as to arbitrability is reviewed de novo. (*Molecular Analytical Systems v. Ciphergen Biosystems, Inc.* (2010) 186 Cal.App.4th 696, 707; *Coast Plaza Doctors Hospital v. Blue Cross of California* (2000) 83 Cal.App.4th 677, 684.) As no extrinsic evidence relating to the arbitration agreement's meaning was submitted, we interpret the arbitration provision de novo.

Our interpretation of the arbitration provision employs the ordinary rules of contract interpretation. (*EFund*, *supra*, 150 Cal.App.4th at p. 1321.) Our goal is to give effect to the mutual intention of the parties at the time the contract was formed. (*Ibid.*) The contractual language must be given its usual and ordinary meaning, the agreement

6.

must be interpreted as a whole, and the language must not be determined to be ambiguous in the abstract. (*Ibid.*) California has a strong public policy favoring arbitration and, as a result, ambiguities or doubts about the scope of the arbitration provision should be resolved in favor of arbitration. (*Gravillis*, *supra*, 143 Cal.App.4th at p. 771.) In accordance with this policy, "an exclusionary clause in an arbitration provision should be narrowly construed." (*Ibid.*) The policy favoring arbitration, however, does not apply when unambiguous language shows the parties did not agree to arbitrate all or a part of the dispute. (*Id*. at p. 772.)

B.    Contractual Language

Section 12.8 of the parties' asset purchase agreement states in relevant part: "Except for claims seeking injunctive or other equitable relief, the Parties shall resolve any dispute [as] set forth in this Agreement. The Parties shall first meet and confer in good faith to attempt to resolve *any dispute, controversy or claim arising out of or relating to this Agreement.* In the event the Parties are not able to settle any such dispute, claim, or controversy by their mutual agreement within thirty (30) days after the initial meeting of the Parties (the 'Mediation Period'), such dispute, controversy or claim *shall be settled by arbitration* administered by the American Health Lawyers Association ('AHLA'), subject to the guidelines set forth in this Section 12.8." (Italics added.) Rephrasing this language as a general rule and a specific exception, the parties agreed to arbitrate "any dispute, controversy or claim arising out of or relating to" their agreement, "[e]xcept for claims seeking injunctive or other equitable relief."

C.    Analysis of Contractual Language

Sellers contend certain of its claims are equitable and are expressly carved out of the arbitration provision. In contrast, Buyers emphasize the breadth of the phrase "any dispute, controversy or claim arising out of or relating to this Agreement" and the mandatory language "shall be settled by arbitration" and contend the only question is

7.

whether the parties' agreement compels arbitration of the so-called equitable claims in the complaint.

The parties have not cited, and we have not located, a published California appellate decision interpreting an arbitration clause's exception for equitable relief and applying that interpretation to claims alleged in a complaint.[2] However, courts outside California have considered and resolved how arbitration carve-outs of claims seeking equitable relief should be applied.

### 1. *Cases from other jurisdictions*

Buyers' argument relies heavily on an unpublished federal district court opinion from Illinois. (*Information Systems Audit and Control Association, Inc. v. Telecommunications Systems, Inc.* (N.D.Ill., Jun. 23, 2017, No. 17C2066) 2017 WL 2720433 (*Information Systems*) [motion to compel arbitration granted].) The arbitration provision in that case stated in relevant part: " 'Without prejudice to either Party's right to seek equitable relief (including, but not limited to, injunction) from a Court of competent jurisdiction, any dispute arising out of or related to this Agreement or the breach thereof that cannot be resolved by negotiation, shall be settled by binding arbitration ….' " (*Id.* at p. *1.) The two-count complaint in *Information Systems* sought a declaratory judgment and a preliminary and permanent injunction. (*Ibid.*)

In analyzing whether the counts alleged were arbitrable, the district court stated it was not clear whether the claim for a declaratory judgment was equitable in nature and acknowledged the claim for an injunction sought equitable relief. (*Information Systems*,

---

**2** We recognize that exceptions for injunctive or equitable relief have been considered in California decisions addressing whether an arbitration agreement was unconscionable. (E.g., *Carbajal v. CWPSC, Inc.* (2016) 245 Cal.App.4th 227, 254–255 [arbitration agreement containing a carve-out allowing employer to obtain injunctive relief was unconscionable; denial of employer's motion to compel arbitration affirmed]; *Mercuro v. Superior Court* (2002) 96 Cal.App.4th 167, 176 [agreement's exclusion of claims for injunctive or other equitable relief covered the types of claims most likely to be pursued by employer and was unconscionable].)

*supra*, 2017 WL 2720433 at p. *3.)  The court concluded, based on Seventh Circuit precedent, that arbitrability did not depend on the characterization of a claim, but on the relationship of the claim to the subject matter of the arbitration clause.  (*Ibid*., citing *Gore v. Alltel Communications, LLC* (7th Cir. 2012) 666 F.3d 1027, 1036.)  The rationale for this rule was to prevent a party from frustrating an arbitration agreement by the manner in which it framed its claims.  The court then noted that both of the counts were based on a breach of contract, which the court described as at the very heart of the arbitration clause's subject matter (i.e., any dispute arising out of or related to the agreement or its breach).

The plaintiff in *Information Systems* argued its two claims sought equitable relief and, therefore, were not arbitrable because of the agreement's exclusion of such claims.  The district court rejected the plaintiff's interpretation of the exception and concluded it did not apply to plaintiff's claims.  (*Information Systems*, *supra*, 2017 WL 2720433 at p. *4.)  The court stated the plaintiff's interpretation was untenable because "there is no reason why the clause would not extend to remedies allowing a court to award monetary relief such as disgorgement or the imposition of a constructive trust.  This would permit a party to obtain from a court essentially the same relief as that otherwise reserved for the arbitrator.  It would make little sense to include such an expansive loophole in what is otherwise a sweeping arbitration provision."  (*Ibid*.)

An example of a case in which a carve-out of equitable claims was given a literal interpretation is *KWD River City Investments, L.P. v. Ross Dress for Less Inc.* (Okla. 2012) 288 P.3d 929 (*KWD River*).  In *KWD River*, the owner of a shopping center filed a declaratory judgment action to resolve a dispute with one of its tenants over a lease provision addressing exterior alterations.  (*Id*. at p. 930.)  The owner asserted the tenant unreasonably withheld its consent to alterations of the exterior of another tenant's store.  The tenant responded by filing a motion to compel arbitration, which the trial court denied.  The intermediate appellate court reversed, concluding the arbitration provision in

9.

the lease covered the dispute. The Supreme Court of Oklahoma granted review, vacated the intermediate appellate court's opinion, and affirmed the trial court's denial of the motion to compel arbitration. (*Ibid*.)[3]

In *KWD River*, the lease provision in dispute stated that the owner would not alter the exterior of the shopping center without the tenant's consent, unless the consent was unreasonably withheld. (*KWD River*, *supra*, 288 P.3d at p. 930.) In analyzing the application of the arbitration agreement's exclusion to the dispute presented, the Supreme Court of Oklahoma concluded that the relief available to each side was equitable. If the owner prevailed because the tenant unreasonably withheld its consent, the owner would be entitled to a judgment (1) declaring that fact and (2) prohibiting the tenant from interfering in the alterations to the exterior of other tenants' stores. Alternatively, if the tenant prevailed, its remedy would be an order directing the owner "to restore the exterior's status quo." (*Ibid*.) The court determined that disputes involving equitable remedies were excluded from arbitration by the express terms of the arbitration provision and concluded arbitration could not be compelled because the relief available to each party was purely equitable. (*Id*. at pp. 930–931.) The language of the arbitration provision and the exclusion was not set forth in the opinion. Instead, the court simply stated that the owner "points out that disputes involving equitable remedies are expressly excluded from the arbitration provision." (*Id*. at p. 930.)

An example of a case in which the arbitration agreement had a carve-out of claims seeking equitable relief and the complaint alleged both claims for damages and equitable relief is *Greenberg v. Sellers* (Fla.App. 2008) 2 So.3d 381. In *Greenberg*, the agreement

---

[3] Another case in which the complaint alleged only equitable claims and the carve-out of equitable claims was given a literal interpretation is *Apartment Investment and Management Company v. Flamingo/South Beach 1 Condominium Assn., Inc.* (Fla.App. 2012) 84 So.3d 1090, 1091, 1093 (plain language of the agreement showed the parties intended to exempt equitable claims from arbitration, the complaint for injunctive relief, constructive trust, equitable accounting, and equitable lien sought only equitable relief, and the trial court properly denied the motion to compel arbitration).

10.

provided for arbitration of any dispute concerning the agreement and also stated: " 'Notwithstanding this provision, the aggrieved party shall be entitled to injunctive and/or equitable relief in a court of competent jurisdiction.' " (*Id*. at p. 382.) The plaintiff filed a complaint for an accounting, breach of contract, breach of fiduciary duty, conversion, and violations of Florida's unfair trade practices act. The defendants filed a motion to compel arbitration of all counts, which the trial court granted in full. (*Ibid*.) The appellate court reversed in part, concluding that (1) the plaintiffs sought the equitable relief of accounting and (2) the trial court should have retained jurisdiction over that claim. (*Id*. at p. 383; see *Swan Landing Development, LLC v. Florida Capital Bank, N.A.* (Fla.App. 2009) 19 So.3d 1068 [arbitration provision excluded actions seeking equitable relief; reversed denial of arbitration of breach of contract counts and affirmed denial of arbitration of foreclosure count, which sought equitable remedy]; *Odion v. Avesis, Inc.* (2014) 327 Ga.App. 443, 445–446 [plain language reflected parties' intent not to arbitrate actions involving injunctive or equitable relief; trial court erred in dismissing the claims for injunctive relief on the ground that they were subject to arbitration].)

### 2. *Application of California law*

The cases from other jurisdictions provide context and perspective on the issues presented in this appeal. Nonetheless, principles of California contract law govern our analysis of the meaning of the carve-out in the parties' arbitration provision. The application of California law is confirmed by section 12.6 of the asset purchase agreement, which provides that it "shall be governed by and construed in accordance with the laws of the State of California (without regard to its conflicts of law rules)." The interpretation of the agreement is addressed in section 12.17, which states that if a "question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement." Section 12.17 also sets forth certain definitions and rules of interpretation

11.

that have no application to the parties' dispute about the scope of the arbitration provision and its exception.

Under California law, the first step in analyzing the meaning of a contract is to determine whether the language is ambiguous—that is, reasonably susceptible to more than one meaning. (*Smith v. Adventist Health System/West* (2010) 182 Cal.App.4th 729, 754–755 [court's threshold question when interpreting a contract is whether the writing is ambiguous].) Whether an ambiguity exists is a question of law subject to independent review. (*Id*. at p. 755.) The parties presented no extrinsic evidence and, therefore, we resolve the question of ambiguity based solely on the contents of their agreement.

Section 12.8 of the asset purchase agreement states: "Except for claims seeking injunctive or other equitable relief, the Parties shall resolve any dispute [as] set forth in this Agreement." Accordingly, we must determine whether the phrase "[e]xcept for claims seeking injunctive or other equitable relief" is reasonably susceptible to more than one meaning. The use of "except for" unambiguously creates an exception to or limitation of the broad arbitration provision set forth later in section 12.8. (See *Hubbard v. City of San Diego* (1976) 55 Cal.App.3d 380, 387 [charter provision granting the city council the power to reorganize departments, divisions and boards of the city government was clearly "limited by the words 'except as establish by the provisions of this Charter' "].)

In addition, the phrase "claims seeking injunctive or other equitable relief" is not ambiguous. It expresses the parties' intent as to the type of "claims"—that is, causes of action or theories for relief—that fall outside the scope of the agreement to arbitrate their disputes. As drafted, the exception does not contain any qualifying language. For instance, the exception is not limited to claims seeking injunction or other equitable relief that have no overlapping issues with claims subject to arbitration. Thus, based on the plain meaning of the agreement's language, any claim seeking equitable relief is excluded from the agreement to arbitrate. (See Civ. Code, § 1638 ["language of a

12.

contract is to govern its interpretation, if the language is clear and explicit"].) The policy favoring arbitration does not override the parties' freedom of contract. We will enforce their unambiguous agreement as written rather than rewriting it to contain limitations the parties did not express. (*Ibid.*; see *Scheenstra v. California Dairies, Inc.* (2013) 213 Cal.App.4th 370, 393, fn. 16 [courts determine the objective meaning of the contract's language to protect the parties objectively reasonable expectations].)

Consequently, Buyers' argument that allowing Sellers to "repackage" claims for damages as equitable claims is contrary to the parties' true intent is unconvincing. There is no extrinsic evidence in the record, much less any extrinsic evidence supporting Buyers' view of the true intent. In the absence of extrinsic evidence, the plain language of the contract governs (Civ. Code, § 1638) and, as drafted, the agreement places no restrictions on either parties' ability to pursue equitable claims outside of arbitration. Therefore, Buyers' claim of procedural gamesmanship is better suited to cases involving the interpretation of a statute (see *Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street* (1983) 35 Cal.3d 312, 323) or circumstances where the parties have expressed a preference for arbitration of legal claims over the pursuit of equitable claims in a judicial forum. Here, no such preference was expressed.

### 3. *Application of exception to Sellers' claims*

Sellers' 10th cause of action seeks specific performance of the management agreement and their 11th cause of action seeks specific performance of the asset purchase agreement. Under California law, which the parties agreed governed the interpretation of their agreement, "[a] claim for specific performance is an equitable one." (*Nwosu v Uba* (2004) 122 Cal.App.4th 1229, 1241.) Therefore, we conclude Sellers' 10th and 11th causes of action fall within the exception to arbitration.

Sellers' 12th, 13th, and 14th causes of action seek rescission based on fraud, negligent misrepresentation, and mutual mistake, respectively. Under California law, rescission "is an equitable remedy, with certain qualifications that limit its application."

13.

(*Hailey v. California Physicians' Service* (2007) 158 Cal.App.4th 452, 468.) The qualifications that limit the availability of rescission do not change the fact that rescission, when available, is an equitable remedy. The purpose of rescission is to restore both parties to their former position as far as possible and to bring about substantial justice by adjusting the equities between the parties even though the status quo cannot be exactly reproduced. (*Neptune Society Corp. v. Longanecker* (1987) 194 Cal.App.3d 1233, 1246.) Based on established principles of California law, we conclude Sellers' 12th, 13th, and 14th causes of action are "claims seeking … equitable relief" and, therefore, fall within the exception and are not subject to arbitration.

Sellers' 15th cause of action alleges UCL violations and seeks "the disgorgement of [Buyers'] profits and return of all misappropriated trade secrets, as permitted by California law." Under California law, disgorgement of profits is an equitable remedy. (*Center for Healthcare Education and Research, Inc. v. International Congress for Joint Reconstruction, Inc.* (2020) 57 Cal.App.5th 1108, 1125.) Furthermore, in *Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, our Supreme Court stated: "While the scope of conduct covered by the UCL is broad, its remedies are limited. [Citation.] A UCL action is equitable in nature; damages cannot be recovered." (*Id*. at p. 1144.) We recognize the principle that UCL actions for equitable monetary relief, including restitution and disgorgement, are arbitrable. (*Cruz v. PacifiCare Health Systems, Inc.* (2003) 30 Cal.4th 303, 320.) This principle, however, does not prevent parties from agreeing not to arbitrate such claims. (See *Swan Landing*, *supra*, 19 So.3d at p. 1073 [when parties agree to pursue various available remedies in different forums, "an appellate court will not 'second guess' the reasonableness of that decision"].) Therefore, we conclude Sellers' UCL cause of action falls within the exception and is not subject to arbitration.[4]

---

[4] We recognize that decisions of federal trial courts may be instructive to the extent their analysis is persuasive, but they are not binding precedent on matters of state law.

II.     DELAY OF ARBITRATION[*]

A.     Background

### 1.     The Trial Court's Decision

The trial court order addressed whether the arbitration or the court proceedings should go first, stating:

> "The court has discretion to delay arbitration where pending litigation between the parties involves overlapping nonarbitrable issues that may render the arbitration unnecessary (e.g., statute of limitations, unrelated cross-claims).  The court can order the arbitration delayed until those other issues are determined (or some earlier time if it chooses).  (Code Civ. Proc. § 1281.2(c) (3rd para.); see *RN Solution, Inc. v. Catholic Healthcare West* (2008) 165 Cal.App.4th 1511, 1521.)  If the nonarbitrable issues do not resolve the dispute, arbitration must proceed.  The court cannot resolve the issues the parties agreed to arbitrate.  (*Parker v. Twentieth Century-Fox Film Corp.* (1981) 118 Cal.App.3d 895, 906.)"

On the first page of the order under the heading "**Ruling**," the trial court stated its decision "to delay arbitration until after causes of action 10-15 have been fully resolved in this court."  In contrast, on the sixth page of the order, the court stated:  "All but causes of action twelve to fourteen should be ordered to arbitration.  Arbitration should be delayed until those causes of action for rescission are resolved in this court."  Thus, the order is internally inconsistent in describing which causes of action are subject to arbitration, which could be regarded as an ambiguity.

Buyers contend the trial court's order should be reversed because its internal inconsistencies make it unclear as to exactly which claims are to be litigated and which claims are to be arbitrated.  In Buyers' view, there is no way to harmonize the conflicting language and, therefore, the order should be reversed.

---

(*T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 175.)  We have considered *Information Systems* and do not think its analysis is persuasive as to how California contract law should be applied to the parties' agreement.

[*]     See footnote, *ante,* page 1.

Buyers' arguments about internal inconsistency are not supported by a citation to any authority setting forth the rules used to interpret a trial court's order. The same rules apply in ascertaining the meaning of a court order as in ascertaining the meaning of any other writing. (*Mendly v. County of Los Angeles* (1994) 23 Cal.App.4th 1193, 1205; *Verner v. Verner* (1978) 77 Cal.App.3d 718, 724.) The interpretation of the meaning and effect of an order is a question of law within the ambit of the appellate court. (*John Siebel Associates v. Keele* (1986) 188 Cal.App.3d 560, 565.)

We conclude the "**Ruling**" on the order's first page states the trial court's true intent. Thus, the court determined the 10th through 15th causes of action sought equitable relief and were not covered by the arbitration agreement. The court also determined "to delay arbitration until after causes of action 10-15 have been fully resolved in this court."[5] In our view, after review of the reporter's transcript of the hearing on the motion to compel arbitration following the issuance of a tentative ruling, the court inadvertently failed to make conforming changes to the body of the order after deciding to alter its tentative ruling following the hearing.

### 2. *Statutory Provisions*

Section 1281.2 sets forth the general rule that "the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that [a written] agreement to arbitrate the controversy exists, unless it determines" a statutory exception applies. One of the exceptions is set forth in the third paragraph of subdivision (d) of section 1281.2, which states:

> "If the court determines that there are other issues between the petitioner
> and the respondent which are not subject to arbitration and which are the
> subject of a pending action or special proceeding between the petitioner and
> the respondent and that a determination of such issues *may make the*

---

[5] If this court has misinterpreted the order, the trial court is not bound by that misinterpretation and can implement its actual intent in the proceedings that follow remittitur.

16.

*arbitration unnecessary*, the court may delay its order to arbitrate until the determination of such other issues or until such earlier time as the court specifies."[6]  (Italics added.)

Section 1281.4 addresses the stay of a judicial action while an arbitration goes forward, providing in part:

> "If a court … has ordered arbitration of a *controversy* which is an issue involved in an action or proceeding pending before a court of this State, the court in which such action or proceeding is pending shall, upon motion of a party to such action or proceeding, stay the action or proceeding until an arbitration is had in accordance with the order to arbitrate or until such earlier time as the court specifies.  [¶] ... [¶]  If the issue which is the *controversy* subject to arbitration is severable, the stay may be with respect to that issue only."

We italicized the word "controversy" because it is defined in the California Arbitration Act.  In 2019, the act stated "controversy" meant "any question arising between parties to an agreement whether such question is one of law or of fact or both." (Stats. 1961, ch. 461, § 2, p. 1540 [former § 1280, subd. (c)]; see Stats. 2019, ch. 870, § 2 [§ 1280, subd. (d); effective Jan. 1, 2020].)  This definition has been described as "very broad."  (*Bunker Hill Park Ltd. v. U.S. Bank National Assn.* (2014) 231 Cal.App.4th 1315, 1328.)

### 3. Case Law

The application of sections 1281.2 and 1281.4 has been addressed in published decisions.  In *Los Angeles Deputy Sheriffs*, *supra*, 234 Cal.App.4th 459, the court considered both provisions, stating:

> "When a party brings a motion to compel arbitration under circumstances in which there may be arbitrable and nonarbitrable issues, the trial court should 'first determine[ ] the arbitrable and nonarbitrable claims alleged in the complaint, order[ ] all of the arbitrable claims to arbitration, and stay[ ] all such claims pending arbitration.  The court would then have ...

---

[6]  Before an amendment was enacted in 2017, this paragraph was the third paragraph of subdivision (c) of section 1281.2.  (Stats. 1978, ch. 260, § 1, p. 543.)  The amendment did not change the wording of the paragraph.  (See Stats. 2017, ch. 480, § 1.)

discretion to delay its order to arbitrate the arbitrable claims under section 1281.2(c), only if it first determine[s] that the adjudication of the nonarbitrable claims in court might make the arbitration unnecessary. Absent that determination, the arbitrable claims would proceed to arbitration and the nonarbitrable claims would continue to be litigated in court unless a party moved successfully pursuant to [Code of Civil Procedure] section 1281.4, to stay further litigation of such nonarbitrable claims.' (*RN Solution, Inc. v. Catholic Healthcare West* (2008) 165 Cal.App.4th 1511, 1521–1522, fns. omitted.)" (*Los Angeles Deputy Sheriffs*, *supra*, at p. 468.)

In *Heritage Provider Network, Inc. v. Superior Court* (2008) 158 Cal.App.4th 1146, the court discussed only the stay provisions in section 1281.4, stating:

"Any party to a judicial proceeding 'is entitled to a stay of those proceedings whenever (1) the arbitration of a controversy has been ordered, and (2) that controversy is also an issue involved in the pending judicial action.' [Citation.] 'The purpose of the statutory stay is to protect the jurisdiction of the arbitrator by preserving the status quo until arbitration is resolved.' [Citation.] 'In the absence of a stay, the continuation of the proceedings in the trial court disrupts the arbitration proceedings and can render them ineffective.' [Citation.]"

The court did not discuss the interaction between section 1281.4's stay provisions and section 1281.2's provision allowing a delay of arbitration. We conclude the description set forth in *Los Angeles Deputy Sheriffs* accurately describes how the discretion to delay arbitration relates to the stay provisions. Specifically, the application of section 1281.4 is not reached when a trial court determines " 'that the adjudication of the nonarbitrable claims in court might make the arbitration unnecessary' " and chooses to delay the arbitration. (*Los Angeles Deputy Sheriffs*, *supra*, 234 Cal.App.4th at p. 468.) The purpose of the stay—protecting the arbitration proceedings from disruption—is of less concern when the arbitration might never happen.

B.      Analysis

Here, the trial court made the determinations required by the third paragraph of subdivision (d) of section 1281.2. The court concluded that there were nonarbitrable issues between Sellers and Buyers and those issues were the subject of the action pending

18.

before it.  In addition—and most significantly for this case—it concluded "that a determination of [the nonarbitrable] issues may make the arbitration unnecessary." (§ 1281.2, subd. (d).)  The court stated it had "discretion to delay arbitration where pending litigation between the parties involves overlapping nonarbitrable issues that may render arbitration unnecessary."  It determined that many of the causes of action "should be ordered to arbitration" and that "[a]rbitration should be delayed" "until after causes of action 10-15 have been fully resolved in this court."

Accordingly, we conclude the trial court correctly identified the scope of its discretion to delay arbitration, correctly determined the resolution of the nonarbitrable claims might render the arbitration unnecessary, and acted within the confines of that discretionary authority when it decided to delay arbitration pursuant to section 1281.2, subdivision (d).

## DISPOSITION

The order granting the motion to compel arbitration in part, denying it in part, and delaying arbitration until after the court resolves the nonarbitrable causes of action is affirmed.  Sellers shall recover their costs on appeal.


FRANSON, J.

WE CONCUR:


HILL, P. J.


PEÑA, J.


19.